# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ALFONSO GATLIN, et al.,**
        **Plaintiffs,**

    v.                                                Case No. 09-C-0961

**DELUX ENTERTAINMENT, LLC d/b/a
DECIBEL DEEP BAR,**
        **Defendant,**

    **and**

**SOCIETY INSURANCE, A MUTUAL COMPANY,**
        **Intervenor Defendant.**

---

## DECISION AND ORDER

The plaintiffs in this action are five African-American men who allege that they were refused entry into defendant's nightclub, Decibel Deep Bar ("DDB"), because of their race on several occasions in 2007 and 2008. They bring claims under 42 U.S.C. §§ 1981 and 2000a. I allowed DDB's insurer, Society Insurance Company ("Society"), to intervene in this action for the purpose of seeking a declaration that it has no duty to defend or indemnify DDB for the claims alleged in plaintiffs' complaint. Before me now is Society's motion for declaratory judgment.

### I. PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that, on several occasions in 2007 and 2008, DDB's doormen refused to allow plaintiffs to enter the nightclub because of their race. One plaintiff was told that he could not enter because the nightclub was currently being used for a private party.

He alleges that white persons were allowed to enter the nightclub even though they had not been invited to any private party. The other plaintiffs allege that they were refused admission because of the way they were dressed. They allege that DDB permitted white patrons to enter even though they were wearing similar or less formal attire than plaintiffs.

In alleging a cause of action for racial discrimination in a place of public accommodation in violation of 42 U.S.C. § 2000a, plaintiffs allege that:

> [DDB] has implemented a policy and practice of denying African[-]American customers, including Plaintiffs, on account of race, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of DDB on the same basis as it makes such available to non-African-American customers. This policy has been carried out by denying African-American customers, including Plaintiffs, entry into DDB on the same terms as non-African-American customers and successfully discouraging African-American customers, including Plaintiffs, from visiting DDB.

(Compl. ¶ 56.) Plaintiffs allege that DDB's conduct was "deliberate and/or with substantial disregard of [sic] Plaintiffs' rights" (Compl. ¶ 58), and that DDB's conduct caused them "pain, suffering, humiliation, emotional anguish, embarrassment, and other damages" (Compl. ¶ 57).

In alleging a cause of action for discrimination in contractual relations in violation of 42 U.S.C. § 1981, plaintiffs allege that:

> [DDB] has intentionally deprived Plaintiffs of their civil rights by intentionally engaging in racial discrimination against Plaintiffs in violation of Section 1981 by implementing, sustaining, and failing to monitor a pattern and practice of refusing to contract with Plaintiffs because of their race when their agents and employees refused Plaintiffs entry into DDB.

(Compl. ¶ 63.) Again, plaintiffs allege that DDB's conduct was "deliberate and/or substantial disregard of [sic] Plaintiff's rights" (Compl. ¶ 67), and that such conduct caused them "pain, emotional anguish, humiliation, and embarrassment" (Compl. ¶ 66).

## II.  DISCUSSION

Under Wisconsin law,[1] an insurer has a duty to defend its insured in a lawsuit when the complaint alleges facts which, if proven, would create liability covered by the policy. See, e.g., Doyle v. Engelke, 219 Wis. 2d 277, 284-85 (1998).  In determining whether an insurer has a duty to defend, the complaint must be liberally construed and all reasonable inferences drawn in favor of the insured.  Id. at 284.  Any doubt as to whether the complaint triggers an insurer's duty to defend must be resolved in favor of the insured. Wausau Tile, Inc. v. County Concrete Corp., 226 Wis. 2d 235, 266 (1999).  In other words, an insurer has a duty to defend its insured when the complaint at least "arguably" asserts liability covered by the policy.  Hamlin Inc. v. Hartford Accident & Indem. Co., 86 F.3d 93, 94 (7th Cir. 1996).  However, because complaints are not always accurate, one cannot be certain from reading one that it will not lead to the insured's being subject to liability covered by the policy.  Id. at 96.  Yet, a complaint does not trigger an insurer's duty to defend unless there is a "plausible" interpretation of the complaint that brings its allegations within the scope of the policy.  Id.  Thus, in opposing an insurer's claim that the complaint does not trigger coverage, the insured must "offer a plausible interpretation of the complaint that would bring its allegations within the scope of the liabilities [insured against]." Id.

In the present case, Society issued both businessowners and umbrella policies to DDB that cover the time period relevant to plaintiffs' claims.  The umbrella policies contain provisions stating that they do not provide coverage for claims not covered by the

---

[1] The parties agree that Wisconsin law governs the interpretation of Society's insurance policies.

underlying primary policies, which in the present case means the businessowners policies. For this reason, I will discuss only the businessowners policies.

The businessowners policies cover damages because of "bodily injury" or "property damage" if such injury or damage was caused by an "occurrence." The policies also cover "personal and advertising injury," which, as is relevant to this case, means injury arising out of "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." Society argues that the complaint does not trigger a duty to defend because plaintiffs' claims do not arise out of an "occurrence" or involve "personal and advertising injury." Society further argues that, even if they did, coverage for such claims would be excluded by the policies' exclusion of "expected or intended injury." I consider these claims below.[2]

## A. "Occurrence"

The policies define "occurrence" as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions." Society argues that plaintiffs' injuries were not caused by an occurrence because the doormen's actions in refusing plaintiffs entry into DDB were not accidental. Rather, the doormen's actions were

---

[2]Society also argues that it has no duty to defend plaintiffs' Section 2000a claim on the ground that plaintiffs cannot obtain "damages" covered by the policy even if they succeed on such claim. However, Society concedes that damages are available under Section 1981. (Reply Br. at 5.) Under Wisconsin law, if a single claim in the complaint alleges liability covered by the policy, the insurer must defend the entire case, even if some claims fall outside the scope of coverage. See, e.g., Plastics Eng'g Co. v. Liberty Mut. Ins. Co., 315 Wis. 2d 556, 585 (2009). Because plaintiffs assert claims under both Section 1981 and Section 2000a, Society could have a duty to defend DDB even if damages are not available under Section 2000a. For this reason, I will not discuss Society's argument regarding the availability of damages under Section 2000a.

4

volitional in that the doormen assessed plaintiffs and determined that, for whatever reason, plaintiffs would not be permitted to enter the nightclub. In other words, Society argues that the doormen did not "accidentally" exclude plaintiffs from the nightclub. DDB does not dispute that the doormen's actions in refusing plaintiffs entry into the nightclub were volitional rather than accidental. However, DDB contends that this does not mean that DDB intended to discriminate against plaintiffs, and it argues that certain allegations in the complaint could be construed to state claims based on unintentional discrimination.

There are two problems with DDB's argument. First, DDB assumes that a volitional act can constitute an "accident" (and, therefore, an "occurrence") simply because the person committing the act did not intend to violate the law or inflict harm on the victim. Although it is true that courts in some jurisdictions interpret the terms "accident" and "occurrence" to encompass situations in which volitional acts result in unintended harm, see 9 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 126:30 (3d ed. 2008) (collecting cases), Wisconsin courts do not. Rather, the Supreme Court of Wisconsin has held that a volitional act is not an "occurrence" even if the actor did not intend to cause harm. Everson v. Lorenz, 280 Wis. 2d 1, 11-16 (2005) (holding that there is no "occurrence" where claim arises out of a volitional act, even if in the course of carrying out the volitional act the actor makes a mistake of fact and/or an error in judgment). Thus, under Wisconsin law, the harm caused by the doormen's actions in refusing plaintiffs entry into DDB would not have been caused by an "occurrence" even if the doormen did not intend to discriminate against plaintiffs.

The second problem with DDB's argument is that although DDB suggests that the complaint alleges that DDB engaged in unintentional discrimination, DDB does not offer

5

Case 2:09-cv-00961-LA    Filed 05/10/10    Page 5 of 11    Document 28

an interpretation of the complaint under which such unintentional discrimination could, if proven, actually result in liability. As noted, an insurer has a duty to defend only if "the complaint alleges facts which, if proven at trial, would give rise to the insurer's liability under the terms of the policy." Doyle, 219 Wis. 2d at 284-85. Thus, DDB must point to allegations in the complaint that could arguably be construed consistently with a viable theory of liability based on unintentional discrimination. In this regard, DDB points out that the complaint alleges that DDB "failed to monitor" a "pattern or practice" of discrimination and cites United States v. Security Management, Inc. for the proposition that a "pattern" can result in liability even in the absence of proof of willful conduct. 96 F.3d 260, 269 (7th Cir. 1996). However, the claim in Security Management arose under the Fair Housing Act, and liability under the Fair Housing Act can be found when a person makes statements that could reasonably be interpreted as being discriminatory even if the person did not, in making the statements, intend to discriminate or intend that the statements be interpreted as being discriminatory. Id.; Jancik v. Dep't of Hous. & Urban Dev., 44 F.3d 553, 556 (7th Cir. 1995). The claims in the present case do not involve the Fair Housing Act or any similar law, and thus DDB must point to some other theory of liability based on unintentional discrimination in order to show that Society has a duty to defend.

DDB does not point to any other theory of liability, and the only other theory that could conceivably apply to the present case is a "disparate impact" theory of liability.[3]

---

[3]As noted, plaintiffs bring causes of action under 42 U.S.C. §§ 1981 and 2000a. Although the Supreme Court has held that a plaintiff must prove disparate treatment rather than disparate impact to succeed on a claim under Section 1981, Gen.Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982), it is at least arguable that a plaintiff may succeed on a disparate impact claim under Section 2000a, see Arguello v. Conoco, Inc., 207 F.3d 803, 813 (5th Cir. 2000) (noting that law is unclear as to whether disparate

6

Under a disparate impact theory, DDB could be found to have discriminated against plaintiffs even though it did not intend to discriminate against them if it maintained a facially neutral policy that had a disparate impact on African Americans. See, e.g., Lewis v. City of Chicago, 528 F.3d 488, 491-92 (7th Cir. 2008) (describing disparate impact theory of liability and comparing it to disparate treatment theory). However, the complaint does not allege that DDB maintained a facially neutral policy that disparately impacted African Americans. Instead, the complaint alleges that the reasons given by the doormen for excluding plaintiffs – that a private party was in progress and that plaintiffs were not wearing proper attire – were pretexts for intentional racial discrimination. (See Compl. ¶¶ 11-13, 18, 22-23, 26-27, 30-31, 34-35, 38-39, 42-43, 46-47, 50-51.) That is, the complaint alleges that DDB intentionally discriminated against African Americans and attempted to disguise such discrimination by telling plaintiffs that they were being excluded for reasons other than their race. The complaint does not even arguably allege that DDB adopted a facially neutral policy that had disparate impact on African Americans, and therefore DDB cannot rely on a disparate impact theory to trigger Society's duty to defend.[4]

---

impact claims are cognizable under § 2000a).

[4] DDB also cites my decision in Washington v. Krahn, in which I found that a complaint alleging racial discrimination alleged an "occurrence" because it alleged that the defendant acted "with reckless disregard for the rights of plaintiffs." 440 F. Supp. 2d 911, 914 (E.D. Wis. 2006). DDB argues that like the complaint in Washington, the complaint in the present case alleges an occurrence because it alleges that defendant acted "with substantial disregard of Plaintiffs' rights." (Compl. ¶¶ 58, 67.) However, assuming that "substantial disregard" could be construed as alleging a claim based on reckless rather than intentional conduct, the problem is that DDB has not pointed to any way in which reckless conduct could, consistently with the allegations of the complaint, lead to DDB's liability. As explained, proof of disparate treatment requires proof of intent to discriminate, and the complaint does not allege facts that can be construed consistently with a disparate impact theory.

7

Accordingly, because the complaint does not allege that plaintiffs' injuries were caused by an accident, the complaint does not allege harm caused by an "occurrence."

**B.     "Personal and Advertising Injury"**

Even if the complaint does not allege harm caused by an "occurrence," it would still trigger Society's duty to defend if it alleged "personal and advertising injury." The policies define "personal and advertising injury" as an injury that arises out of a number of listed "offenses," including "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." DDB argues that the complaint could be construed as alleging that DDB wrongfully evicted plaintiffs from the nightclub and/or invaded their right of private occupancy.

The parties have not cited, and I have not found, cases decided by Wisconsin state courts that interpret the "wrongful eviction" or "right of private occupancy" language in Society's policies. However, the Seventh Circuit, in a case applying Wisconsin law, held that a person must have a legal right to occupy a room, dwelling or premises before the insured could have wrongfully evicted that person or have invaded that person's right of private occupancy. Security Management, 96 F.3d at 266. In the present case, plaintiffs do not allege that they had a legal right to occupy DDB. Rather, DDB is a nightclub, and plaintiffs could have been denied entry for any number of permissible reasons. The fact that plaintiffs allege that they were excluded for impermissible reasons does not mean that they had a legal right to occupy the premises. Courts from other jurisdictions have found that when restaurants, bars and other business establishments exclude or evict patrons, and those patrons later claim that the reason for their exclusion or eviction was a prohibited

8

form of discrimination, the patrons did not have a legal right to occupy the premises. See Westfield Ins. Group v. J.P.'s Wharf, Ltd., 859 A.2d 74, 76-77 (Del. 2004); STK Enters., Inc. v. Crusader Ins. Co., 14 P.3d 638, 640-42 (Or. Ct. App. 2000); see also Zelda, Inc. v. Northland Ins. Co., 66 Cal. Rptr. 2d 356, 363-64 (Cal. Ct. App. 1997) (holding that business patron is invitee who has no legal interest in businessowner's real property). Because I find the reasoning of these cases persuasive and conclude that the Supreme Court of Wisconsin would likely follow them,[5] I conclude that plaintiffs did not have a legal right to occupy DDB.

The cases that DDB cites for the proposition that racially motivated evictions or exclusions from commercial premises may result in wrongful evictions or invasions of the right of private occupancy are distinguishable. DDB cites this court's decision in Gardner v. Romano, in which Judge Curran found that the exclusion of a prospective tenant of an apartment building on the basis of race constituted an "invasion of the right of private occupancy" of a dwelling. 688 F. Supp. 489, 492-93 (E.D. Wis. 1988). Judge Curran reasoned that if "invasion of the right of private occupancy" required a person to have a legal right to occupy the premises, then this phrase would have no meaning that was not already encompassed by the term "wrongful eviction." The court thus construed "invasion of the right of private occupancy" to cover a situation in which a prospective tenant seeks to occupy a premises but is excluded on the basis of race. Id. However, Gardner was decided before the Seventh Circuit decided Security Management, in which the Seventh

---

[5]When sitting in diversity, I must apply state law as I believe the state's highest court would apply it if faced with the same issue. Officer v. Chase Ins. Life & Annuity Co., 541 F.3d 713, 715 (7th Cir. 2008).

9

Circuit reached the exact opposite conclusion. In Security Managment, the court held that a prospective tenant does not have a legal right to occupy a premises he or she seeks to lease, and that therefore refusing to lease the premises to the prospective tenant on the basis of race does not constitute an interference with the prospective tenant's right of private occupancy. 96 F.3d at 264-66. The court also rejected the argument accepted by Judge Curran in Gardner – namely, that the "invasion of the right of private occupancy" language would be surplusage if it were interpreted as applying only to situations in which a person has a legal right to occupy the premises. Id. at 266. Thus, Security Management supercedes Gardner.[6]

DDB also relies on Z.R.L. Corporation v. Great Center Insurance Co., in which an Illinois appellate court found that a restaurant "wrongfully evicted" an African-American patron even though the patron did not have a legal right to occupy the premises. 510 N.E.2d 102, 103-04 (Ill. Ct. App. 1987). However, Z.R.L. involved policy language that was materially different from the language that appears in Society's policies. Specifically, the policy did not include the language "invasion of the right of private occupancy," and the court found the omission of this language significant. Id. The court reasoned that where "wrongful eviction" is included among a series of terms relating to invasions of the right of private occupancy, "wrongful eviction" should be construed to mean wrongful eviction from a premises that a person has a legal right to occupy. Id. at 104. In contrast, where "wrongful eviction" is not included in such a series, a wrongful eviction can occur even

---

[6]Indeed, the Seventh Circuit analogized the lower court's decision in Security Management (which the Seventh Circuit reversed) to Judge Curran's decision in Gardner. Security Management, 96 F.3d at 264.

10

where the patron does not have a legal right to occupy the premises. Id. In Society's policies, "wrongful eviction" is included among a series of terms relating to invasions of the right of private occupancy, and therefore Z.R.L. does not support DDB's position in the present case. Other courts interpreting policies containing language similar to the language in Society's policies have distinguished Z.L.R. on similar grounds. See Westfield Ins. Group, 859 A.2d at 76 n.8; STK Enters., Inc., 14 P.3d at 642 n.4; Zelda, Inc., 66 Cal. Rptr. 2d at 363-64.

Accordingly, I conclude that the complaint does not state any claims falling with Society's coverage of "personal and advertising injury."

### III. CONCLUSION

Because the complaint does not allege either an "occurrence" or "personal and advertising injury," Society has no duty to defend or indemnify DDB in the present case. In light of this conclusion, I need not consider Society's argument that plaintiffs' claims fall within the policy's exclusion of "expected or intended injury." See, e.g., Estate of Sustache v. Am. Family Mut. Ins. Co., 311 Wis. 2d 548, (2008) ("[W]hen a court determines that there is no coverage in the policy for the allegations in the complaint, it is not necessary to interpret the policy's exclusions.").

**THEREFORE, IT IS ORDERED** that Society's motion for declaratory judgment is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 10 day of May, 2010.

/s_____
LYNN ADELMAN
District Judge

11